IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| **CRYSTAL AUSTIN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Case No.: |
| v. | ) |
| | ) |
| **ARCHITECTURAL SYSTEMS** | ) |
| **INCORPORATED,** | ) REQUEST FOR JURY TRIAL |
| | ) |
| **Defendant.** | ) |
| | ) |

Serve Registered Agent:

**SCOTT BECKWITH
707 WEST HIGHWAY 60
MONETT, MO 65708**

## COMPLAINT

COMES NOW Plaintiff Crystal Rene Austin**,** and for her claims against the above-named Defendant, alleges and states as follows:

1. Plaintiff is an individual residing in Monett, Barry County, Missouri.

2. Defendant is a corporation organized under the laws of Missouri with its principal place of business in Missouri.

3. This case involves the following torts:

    a. Retaliation for exercising rights granted by the Missouri Worker's Compensation Law, in violation of R.S.Mo. 287.780, *et seq*.;

    b. Disability discrimination in violation of the Missouri Human Rights Act;

    c. Disability discrimination and failure to accommodate in violation of the Americans with Disabilities Act as Amended;

1

d. Interference in violation of the Family Medical Leave Act; and

e. Retaliation in violation of the Family Medical Leave Act.

4. Plaintiff was hired and worked for Defendant at its facility in Aurora, Lawrence County, Missouri.

5. Plaintiff suffered a work-related injury and exercised rights under the Missouri Workers' Compensation Law.

6. Plaintiff suffered the adverse employment actions alleged herein in Aurora, Lawrence County, Missouri.

7. Defendant is a business engaged in an industry affecting interstate commerce, in that Defendant manufactures products that are purchased by and delivered to companies and individuals across the United States.

8. Defendant employs more than five people and is an "employer" within the meaning of the Missouri Worker's Compensation Law pursuant to § 287.030, R.S.Mo.

9. Defendant employs more than fifteen people for each working day in each of twenty or more calendar weeks during the current or preceding year, and is therefore an "employer" within the meaning of the Missouri Human Rights Act ("MHRA") pursuant to § 213.010(8), R.S.Mo. and the Americans with Disabilities Act as Amended ("ADAAA"), pursuant to 42 U.S.C. § 12101(5).

10. Defendant employed more the 50 people within 75 miles of the location at which Plaintiff worked, and is therefore an "employer" within the meaning of the Family Medical Leave Act ("FMLA"), pursuant to 29 U.S.C. § 2611(4).

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Counts III-VI arise under the laws of the United States—specifically, the ADAAA and FMLA—

and the Court has supplemental jurisdiction over Plaintiff's other claims pursuant to 28 U.S.C. § 1367(a), as such claims are so related as to form a single case or controversy.

12. Upon information and belief, Defendant employed more than 200 employees in 2023, 2024, and 2025.

**FACTS COMMON TO ALL COUNTS**

13. Plaintiff began working for Defendant as a Saw Operator in or about May 2019 as a temporary employee.

14. On or about November 5, 2019, Defendant hired Plaintiff as a permanent, full-time employee, still in the position of Saw Operator.

15. Plaintiff's duties as a Saw Operator for Defendant included reading product specifications; setting up and operating industrial saws; performing quality control checks; maintaining machinery; and carrying out other tasks associated with her role as a Saw Operator; as well as any other tasks assigned to her.

16. As a Saw Operator for Defendant, Plaintiff's job required standing nearly 100% of the time, including long periods of standing still, primarily on the concrete shop floor.

17. In or about Summer 2020, Plaintiff began to experience intense pain in her feet.

18. As a result of the pain, Plaintiff requested a padded surface on which to stand while she worked.

19. Plaintiff emailed this request to Defendant's Human Resources department.

20. The Human Resources department never received a response.

21. receiving no response, Plaintiff bought floormats from Wal-Mart with her own money and used them at her workstations.

3

22. Approximately four months later, Defendant provided non-slip, industrial floor mats for Plaintiff's work stations.

23. In or about October 2022, Plaintiff was diagnosed with Plantar Fasciitis and bone spurs in her feet.

24. In or about November 2022, Plaintiff's personal physician opined that he believed that her diagnosed Plantar Fasciitis and bone spurs were due to her standing for extended periods of time on the concrete floor at work, and thus work-related.

25. Plaintiff relayed both her diagnosis and her doctor's opinion about the cause of her condition to her supervisor, Mike Huebner; along with Defendant's Human Resources representative, Jill l/n/u (no longer employed by Defendant), and Defendant's Plant Manager, Terry Postlewaite.

26. Plaintiff asked these individuals if she should see a doctor pursuant to worker's compensation.

27. Defendant stated they would "get back" to Plaintiff about the issue.

28. No one from Defendant ever offered Plaintiff medical examination or treatment for her work-related injury.

29. Defendant, as Plaintiff's employer, controls the medical treatment for all work-related injuries. R.S.Mo. § 287.140.

30. Due to the lack of response, Plaintiff pursued treatment through her personal physician.

31. In late 2022, Plaintiff requested FMLA paperwork.

32. Plaintiff was informed by Defendant's Human Resources representative Julie, l/n/u that Plaintiff had been approved for intermittent FMLA leave.

33. Plaintiff utilized her intermittent FMLA leave in accordance with the instructions she was given by Defendant throughout the rest of 2022.

34. In or about the beginning of January 2023, Defendant requested that Plaintiff have her doctor recertify her FMLA documentation.

35. Plaintiff was informed that she needed to recertify her FMLA documentation because a new calendar year had begun.

36. Plaintiff provided the paperwork to her doctor.

37. Plaintiff was approved for intermittent FMLA again in or about January 2023.

38. In or about August of 2023, Plaintiff's doctor informed her that, because previous treatments had been largely ineffective, surgery was the possible next step.

39. Plaintiff was advised that before undergoing surgery, her doctor wanted her to complete a one-month period during which time she would need to remain almost entirely off her feet.

40. Her doctor told Plaintiff that if she did need to walk during the month-long period, then she was only to do so with the assistance of a walking boot.

41. Plaintiff relayed this information to Defendant's Human Resources representative, Tiffany Gripka.

42. Plaintiff asked if she could wear the boot at the facility and utilize a stool or chair as she operated the saw to which she was assigned.

43. Gripka stated that she would "talk with management," but would never follow up with Plaintiff about any potential accommodations other than FMLA leave.

44. On or about August 23, 2023, Plaintiff was given another FMLA Certification form to provide to her doctor with a due date of September 7, 2023.

5

45. In response, Plaintiff's physician informed her that his office had provided the information requested by the FMLA paperwork earlier that year, and that her leave had been already approved.

46. At no point during this process did Gripka warn Plaintiff that she was close to exhausting her FMLA hours.

47. Plaintiff had not utilized a significant amount of FMLA leave between January 1 and August 30, 2023.

48. Gripka never mentioned this possibility because Plaintiff was not close to exhausting her allotted 480 hours of intermittent FMLA leave, which she had used only sparingly.

49. On or about August 31, 2023, Plaintiff began her one-month medical leave.

50. In or about late September, Plaintiff called Gripka to relay that Plaintiff's doctor had told her that he believed surgery was the likely next step.

51. Plaintiff relayed that the doctor said she would need an MRI which was scheduled approximately two weeks after the date of the phone call.

52. Plaintiff relayed to Gripka that the doctor wanted to push back her return-to-work date until he could review the results of her upcoming MRI.

53. During their phone call, Gripka made no mention of Plaintiff's FMLA hours approaching exhaustion.

54. At this time, Defendant's time-keeping system also did not indicate that Plaintiff had exhausted her allotted FMLA leave.

55. Gripka ended the call by requesting that Plaintiff update with the results of the MRI as well as any recommendation for surgery once Plaintiff received it.

56. Plaintiff agreed and they ended the call.

57. Gripka did not mention any potential exhaustion of Plaintiff's FMLA hours, Plaintiff returning before her MRI, or Plaintiff's returning when the original month-long period ended during that call.

58. In contrast, Plaintiff expressly informed Gripka of her doctor's orders regarding additional time off while she awaited the MRI.

59. Gripka responded only by providing paperwork to be completed by Plaintiff's doctor and requesting that Plaintiff keep her updated with dates and medical documentation.

60. In or about late November 2023, Plaintiff received a letter from Defendant alleging that her 480 FMLA hours had been exhausted as of October 31, 2023.

61. The letter alleged that Defendant had communicated with Plaintiff regarding the exhaustion of her FMLA hours and that she had failed to respond.

62. Plaintiff had never received any communication from Defendant regarding nearing the end of her allotted FMLA time prior to the November 2023 letter.

63. Plaintiff had spoken with Gripka in mid-October 2023, and Plaintiff provided her with all the information she had at the time.

64. Plaintiff forwarded her doctor's recommendation that she take additional time off while awaiting the MRI, and possibly remain off work through her surgery, if the MRI results indicated surgical intervention was necessary.

65. Gripka did not indicate that Plaintiff was near FMLA exhaustion during that call, nor any other conversation.

66. Gripka did provide additional paperwork to have Plaintiff's doctor complete.

7

67. Following that conversation, Plaintiff believed Gripka accepted her explanation of the doctor's plan to keep her off work until, at least, the MRI.

68. Gripka also provided no direction, nor did she communicate an expectation that Plaintiff needed to return to work by any certain date.

69. The letter went on to state that because Plaintiff had not returned to work nor had she communicated with Defendant regarding her intent to do so, she was considered to have abandoned her job.

70. On or about January 6, 2024, Plaintiff timely filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Missouri Commission on Human Rights ("MCHR"), alleging that Defendant engaged in the discriminatory actions asserted in this lawsuit, or in the alternative, that all conduct alleged herein would have reasonably arisen from the investigation of that charge.

71. A Notice of Right-to-Sue letter dated March 6, 2025, has been issued, and this action is being brought within ninety (90) days from the issuance of such Right-to-Sue letter.

72. All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees, acting within the course and scope of their employment, as set forth.

## COUNT I – RETALIATION FOR EXERCISING WORKERS' COMPENSATION RIGHTS IN VIOLATION OF 287.780 R.S.Mo.

73. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of her Complaint as though fully stated herein.

74. Plaintiff was injured while in the course and scope of her employment with Defendant.

75. Plaintiff exercised rights granted by Missouri Workers' Compensation Law, including but not limited to requesting medical treatment, modified duty, work restrictions, and time off work for convalescence.

76. Defendant took adverse actions against Plaintiff, including but not limited to discharging Plaintiff from employment.

77. The motivating factor in these adverse employment actions was Plaintiff's exercise of her rights under the Workers' Compensation Laws of Missouri as outlined above.

78. The justifications for Plaintiff's discharge are false and/or pre-textual.

79. The adverse actions of Defendant were acts of retaliation, in violation of 287.780 R.S.Mo. which states as follows:

> No employer or agent shall discharge or discriminate against any employee for exercising any of his or her rights under this chapter when the exercising of such rights is the motivating factor in the discharge or discrimination. Any employee who has been discharged or discriminated against in such manner shall have a civil action for damages against him or her employer.

80. As a direct and proximate result of Defendant's unlawful conduct, including wrongfully discharging plaintiff from employment, Plaintiff has suffered irreparable injury, including past and future pecuniary issues, loss of employment opportunities, emotional pain, suffering, humiliation, inconvenience, mental anguish, and loss of enjoyment of life, and will continue to suffer the same unless and until the court grants relief.

81. The conduct of Defendant, as set forth above, was intentionally harmful to Plaintiff and done without just cause.

82. Additionally, the conduct of Defendant, as set forth above, was done with evil motive.

83. Thus, an award of punitive damages is appropriate.

9

WHEREFORE, Plaintiff prays for judgment against Defendant for compensatory damages in an amount fair, reasonable, and exceeding $75,000; for punitive damages; for Plaintiff's costs and expenses incurred herein; and for all other relief deemed just and proper by this Court.

## COUNT II – DISABILITY DISCRIMINATION IN VIOLATION OF THE MISSOURI HUMAN RIGHTS ACT

84. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of her Complaint as though fully stated herein.

85. Plaintiff suffered from physical impairments resulting from the injuries sustained as described above.

86. These physical impairments limited Plaintiff from major life activities, including the ability to stand for long periods of time, to ambulate without a walking boot, and to maintain employment.

87. Defendant believed that these physical impairments limited Plaintiff from additional major life activities and would do so for longer than they actually did.

88. In reality, Plaintiff could at all times perform the essential job functions of her position with reasonable accommodations, including slightly modified duty, providing of a chair while she worked, and medical leave.

89. This condition had an actual duration greater than six months.

90. Therefore, Plaintiff had a "disability" under Section 213.010(5) – both actual and perceived.

91. Defendant took adverse employment actions against Plaintiff, including but not limited to refusing to accommodate Plaintiff and discharging Plaintiff from employment.

92. A/The motivating factor in these adverse employment actions was Plaintiff's disability.

93. As a direct and proximate result of Defendant's unlawful conduct Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, and will continue to suffer the same unless and until this court grants relief.

94. The conduct of Defendant, as set forth above, was intentionally harmful to the Plaintiff and done without just cause.

95. Additionally, the conduct of Defendant, as set forth above, was done with evil motive.

96. Thus, an award of punitive damages is appropriate.

97. Plaintiff is also entitled to recover all of costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against the above-named Defendant for compensatory damages in an amount fair, reasonable, and exceeding $75,000; for punitive damages; for Plaintiff's costs and expenses incurred herein; for attorneys' fees; and for such other and further consideration and relief as the Court may deem just and equitable.

### COUNT III – DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AS AMENDED (FAILURE TO ACCOMMODATE)

98. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of her Complaint as though fully stated herein.

99. Plaintiff suffered from physical impairments resulting from the injuries sustained as described above.

100. These physical impairments limited Plaintiff from major life activities, including the ability to stand for long periods of time, to ambulate without a walking boot, and to maintain employment.

101. These physical impairments limited the operation of major bodily functions, including the ability to ambulate without pain and stand without pain for meaningful periods of time.

102. Defendant believed that these physical impairments limited Plaintiff from additional major life activities and would do so for longer than they actually did.

103. In reality, Plaintiff could at all times perform the essential job functions of her position with reasonable accommodations, including slightly modified duty, use of equipment (including a walking boot and chair/stool), and medical leave.

104. Plaintiff suffered from a "disability" as defined by 42 U.S.C. § 12102(1).

105. Defendant had an affirmative obligation to engage in the interactive accommodation process with Plaintiff after becoming aware of her medical condition and need for accommodations.

106. Defendant failed to take reasonable steps to determine if Plaintiff could be accommodated.

107. Defendant failed to accommodate Plaintiff through either modified duty, medical leave, or position reassignment.

108. The failure to engage in the interactive process and failure to reasonably accommodate Plaintiff constitute violations of the ADA in and of themselves.

109. Defendant took adverse employment actions against Plaintiff, including but not limited to: refusing to reasonably accommodate Plaintiff's physical impairments; refusing to

engage in the interactive accommodation process with Plaintiff; suspending Plaintiff without pay while Defendant refused to accommodate Plaintiff; refusing to allow Plaintiff to work/refusing to give Plaintiff assignments and/or hours; and discharging Plaintiff from employment.

110. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, and will continue to suffer the same unless and until this Court grants relief.

111. Defendant acted with intention in reckless disregard of Plaintiff's federally protected rights.

112. Additionally, the conduct of Defendant, as set forth above, was done with evil motive.

113. Thus, an award of punitive damages is appropriate.

114. Plaintiff is also entitled to recover all of costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against the above-named Defendant for compensatory damages in an amount fair, reasonable, and exceeding $75,000; for punitive damages; for Plaintiff's costs and expenses incurred herein; for attorneys' fees; for the equitable relief of front pay; and for such other and further consideration and relief as the Court may deem just and equitable.

### COUNT IV – RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AS AMENDED (ADVERSE EMPLOYMENT ACTIONS)

115. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of her Complaint as though fully stated herein.

116. Plaintiff suffered from physical impairments resulting from the injuries sustained

as described above.

117. These physical impairments limited Plaintiff from major life activities, including the ability to stand for long periods of time, to ambulate without a walking boot, and to maintain employment.

118. These physical impairments limited the operation of major bodily functions, including the ability to ambulate without pain and stand without pain for meaningful periods of time.

119. Defendant believed that these physical impairments limited Plaintiff from additional major life activities and would do so for longer than they actually did.

120. In reality, Plaintiff could at all times perform the essential job functions of her position with reasonable accommodations, including slightly modified duty, use of equipment (including a walking boot and chair/stool), and medical leave.

121. Plaintiff suffered from a "disability" as defined by 42 U.S.C. § 12102(1).

122. Plaintiff was qualified for her former position.

123. Plaintiff engaged in protected activity by, among other things, requesting a reasonable accommodation for her disability.

124. Defendant took adverse employment actions against Plaintiff, including but not limited to: refusing to reasonably accommodate Plaintiff's physical impairments; refusing to engage in the interactive accommodation process with Plaintiff; suspending Plaintiff without pay while Defendant refused to accommodate Plaintiff; refusing to allow Plaintiff to work/refusing to give Plaintiff assignments and/or hours; and discharging Plaintiff from employment.

125. These adverse employment actions were taken because of Plaintiff's disability and/or because Plaintiff engaged in protected activity.

126. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, and will continue to suffer the same unless and until this Court grants relief.

170. Defendant acted toward Plaintiff with willful conduct, wanton conduct, and/or malice.

171. Defendant acted with intention in reckless disregard of Plaintiff's federally protected rights.

127. Thus, an award of punitive and exemplary damages is appropriate.

128. Plaintiff is also entitled to recover her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against the above-named Defendant for compensatory damages in an amount fair, reasonable, and exceeding $75,000; for punitive damages; for Plaintiff's costs and expenses incurred herein; for attorneys' fees; for the equitable relief of front pay; and for such other and further consideration and relief as the Court may deem just and equitable.

### COUNT V – INTERFERENCE WITH RIGHTS GRANTED BY THE FAMILY MEDICAL LEAVE ACT, IN VIOLATION OF 29 U.S.C. § 2615 *et seq.*

129. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of her Complaint as though fully stated herein.

130. Plaintiff was eligible for FMLA leave for her own serious medical condition.

131. Plaintiff sought leave for a qualifying reason under the FMLA.

132. Defendant was aware of Plaintiff's need for such leave, as Plaintiff made a formal

request for the same.

133. Defendant unlawfully interfered with Plaintiff's right to FMLA leave.

134. These actions included, denying Plaintiff FMLA leave; lying to Plaintiff about her remaining FMLA leave; discouraging Plaintiff from using FMLA leave; presenting unlawful obstacles to Plaintiff's utilizing FMLA leave; and discharging her from employment while on leave.

135. These actions were motivated by Plaintiff's need for leave pursuant to FMLA and her exercise of rights granted by FMLA and attempted exercise of further rights granted by FMLA.

136. As a direct and proximate result of Defendant's unlawful conduct outlined above, Plaintiff has suffered irreparable injury, including monetary loss, lost salary and wages, lost employment benefits, and other compensation, as well as interest on these amounts calculated at the prevailing rate.

137. Defendant's actions were not performed in good faith nor based on any reasonable grounds, entitling Plaintiff to an additional award of liquidated damages.

138. Plaintiff is also entitled to recover her reasonable attorneys' fees, reasonable expert witness fees, and other costs of this action from Defendant.

WHEREFORE, the Plaintiff prays for judgment against the above-named Defendant for all damages allowable by law; for interest as allowed by law; for liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii); of the costs of this action; for her attorneys' fees; for the equitable relief of front pay; and for such other and further consideration and relief as the Court may deem just and equitable.

## COUNT VI – RETALIATION BASED ON EXERCISE OF RIGHTS GRANTED BY THE FAMILY MEDICAL LEAVE ACT, IN VIOLATION OF 29 U.S.C. § 2615 *et seq*.

139. Plaintiff incorporates by reference the allegations contained in all preceding Paragraphs of her Complaint as though fully stated herein.

140. Plaintiff engaged in activity provided by and protected by the FMLA.

141. This activity included requesting FMLA leave and using FMLA leave.

142. Plaintiff's request for leave pursuant to FMLA was legitimate, as evidenced by the approval of the leave by Defendant following the medical provider's certification.

143. Defendant took adverse actions against Plaintiff.

144. These actions included, but are not limited, to lying to Plaintiff about her remaining FMLA leave, presenting unlawful obstacles to Plaintiff's utilizing FMLA leave; and discharging her from employment.

145. These actions were motivated by Plaintiff's exercise of rights granted by FMLA and Plaintiff's engaging in activity protected by FMLA.

146. As a direct and proximate result of Defendant's unlawful conduct outlined above, including wrongfully discharging Plaintiff from employment, Plaintiff has suffered irreparable injury, including monetary loss, lost salary and wages, lost employment benefits, and other compensation, as well as interest on these amounts calculated at the prevailing rate.

147. Defendant's actions were not performed in good faith nor based on any reasonable grounds, entitling Plaintiff to an additional award of liquidated damages.

148. Plaintiff is also entitled to recover her reasonable attorneys' fees, reasonable expert witness fees, and other costs of this action from Defendant.

WHEREFORE, the Plaintiff prays for judgment against the above-named Defendant

for all damages allowable by law; for interest as allowed by law; for liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii); of the costs of this action; for her attorneys' fees; for the equitable relief of front pay; and for such other and further consideration and relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on all accounts and allegations of wrongful conduct alleged in this Complaint.

Respectfully submitted,

*/s/ Robert A. Bruce*
John F. Doyle, MO Bar No. 66626
Robert A. Bruce, MO Bar No. 69985
DOYLE & BRUCE LLC
748 Ann Avenue
Kansas City, Kansas 66101
Telephone: (913) 543-8558
John@KCLaw.com
Robert@KCLaw.com
ATTORNEYS FOR PLAINTIFF